IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN CASTELLANI | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | NO. 07-1198 |
| BUCKS COUNTY MUNICIPALITY | : | |
| ("Defendant BCM"), CARMEN THOME, | : | |
| RACHAEL CHERRY, and MEREDITH | : | |
| DOLAN | : | |
| Defendants. | : | |
| | : | |

DuBOIS, J.                                                    August 27, 2008

## MEMORANDUM

### I.      INTRODUCTION

This dispute stems from plaintiff's discharge from her employment as an emergency 911 dispatcher for Bucks County Municipality ("the County").  Plaintiff alleges that her employment with the County was unlawfully terminated in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12111, et seq., Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951, et seq., and Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq.  Plaintiff asserts claims against the County, and County Human Resources employees Carmen Thome, Rachael Cherry and Meredith Dolan.

Presently before the Court is defendants' motion for summary judgment.  For the reasons that follow, the Court grants defendants' motion as to all counts of the Amended Complaint and enters judgment in favor of defendants Bucks County Municipality, Carmen Thome, Rachael Cherry and Meredith Dolan, and against plaintiff Susan Castellani.

II.     **FACTUAL BACKGROUND**

The following facts are undisputed:

Plaintiff began her employment as a 911 dispatcher for the County on June 17, 2002. Plaintiff was stationed at the County Courthouse in Doylestown, Pennsylvania, an approximately forty-five minute drive from her home.  Plaintiff typically worked a twelve-hour shift between the hours of 6:00 p.m. and 6:00 a.m.  Plaintiff's duties involved answering, processing and transmitting telephone calls from the general public.  As a dispatcher, plaintiff had as many as sixteen or seventeen incidents to track at one time.  The dispatch position was stressful because of the "non stop" and "fast paced" nature of the work.

Plaintiff was diagnosed with insulin resistant (Type II) diabetes after suffering a hypoglycemic reaction at work on September 16, 2004, which resulted in her being transported to the emergency room by ambulance.  On September 20, 2004, plaintiff began a period of leave covered by the FMLA.

In the medical certification forms submitted in support of plaintiff's application for FMLA leave, plaintiff's doctor identified "fluctuating blood sugars" and "frequent hypoglecemic reactions" as medical conditions necessitating plaintiff's leave.  Once on leave, plaintiff submitted regular Certification of Healthcare Provider Forms updating the County on the status of her health.  In addition to the twelve weeks of leave she was entitled to under the FMLA, plaintiff's collective bargaining agreement provided up to six months of medical leave to run concurrently with the FMLA leave.

2

On November 18, 2004,[1] plaintiff had a conversation with Ann Markowitz, then a Human Resources employee for the County.  Plaintiff informed Ms. Markowitz that she wished to resume working, but that her health prevented her from returning to her position as a 911 dispatcher.  Plaintiff recalls Ms. Markowitz stating in response that plaintiff would have to return to her job as a dispatcher to "post" through her union for different jobs in the County.  Ms. Markowitz also informed plaintiff that she could file for an extension of leave if she required it.

After speaking with Ms. Markowitz, plaintiff filed for, and received, extensions of her leave running through March 20, 2005, the end of her contractual six-month leave period.  On the forms submitted in support of her leave extension requests, plaintiff stated that she was incapacitated for an unknown duration.

By letter dated March 21, 2005, defendant Cherry, a County Human Resources employee responsible for processing leaves of absence, informed plaintiff that she had exhausted her FMLA and contractual leave entitlements, leaving her with two options.  Plaintiff's first option was to return to work on Friday, March 25, 2005, "with a doctor's note full duty, no restrictions. Any accommodations you may require must be submitted in writing to our office prior to your return."  Plaintiff's second option, if she could not report to work, was to have her position with the County terminated effective March 25, 2005.  Under this second option, plaintiff's benefits would be extended until April 30, 2005, and she could reapply for her position when able to do so.  The letter provided a phone number for plaintiff to call with any questions.

---

[1] Plaintiff stated in her deposition that she spoke with Ms. Markowitz on December 20, 2004.  (Pl.'s Dep. 2/27/08, Ex. A to Defs.' Mot. at 98.)  Ms. Markowitz stated at her deposition – and her notes on the conversation indicate – that she spoke to plaintiff on November 18, 2004 (Markowitz Dep. 4/1/08, Ex. P to Defs.' Reply Br. at 16, 20; Dolan Notes of 11/18/04, Ex. 6 to Pl.'s Resp.), and plaintiff refers to the conversation having occurred on November 18, 2004 in her briefs.  The Court concludes that the difference in dates is not material and adopts the November 18, 2004 date for purposes of this Memorandum.

By letter dated March 23, 2005, plaintiff responded to Ms. Cherry's letter.  In her response, plaintiff "confirm[ed] [her] intent to return to work."  She stated that she would provide additional information – including information about restrictions – after her treating physician returned from the Easter holiday on March 28, 2005.  Plaintiff requested that Ms. Cherry "contact [her] immediately" in order to "engage in an 'interactive process.'"  With respect to that "interactive process," plaintiff stated that she would be able to return to work with some restrictions and looked forward to a dialogue "to determine if [she could] return to [her] original position or another position as long as necessary medical accommodations are provided."

Defendant Cherry did not call plaintiff when she received her letter.  Instead, by letter dated March 30, 2005, defendant Dolan, Assistant Director of Human Resources for the County, reiterated the options offered to plaintiff in defendant Cherry's letter of March 21, 2005. Defendant Dolan also provided a job description of the 911 dispatcher position and requested "a medical note stating the exact accommodations and duration such accommodations are needed in order to return to work full duty."  The letter concluded by stating "[t]his information must be received by **NOON** April 1, 2005."

After sending her letter, defendant Dolan spoke with plaintiff on or about March 31, 2005, when plaintiff called defendant Dolan at the suggestion of a union representative.  During that conversation, defendant Dolan reiterated the information contained in the letters to plaintiff dated March 23, 2005, and March 31, 2005.  Specifically, defendant Dolan told plaintiff that she would have to submit a medical clearance to return to work and a request identifying necessary accommodations if accommodations were required.

Plaintiff did not provide the County information about her medical condition by noon on April 1, 2005. On April 4, 2005, defendant Thome, Director of Human Resources for the County, sent plaintiff a formal notice of her separation from Bucks County effective March 25, 2005.

On April 8, 2005, four days after informing plaintiff of her discharge from employment, the County received a letter dated April 4, 2005, from Dr. Anthony J. Rock, plaintiff's treating physician, authorizing plaintiff's return to work with a list of restrictions. The restrictions included, inter alia: (1) a prohibition on plaintiff working as a 911 dispatcher because of the stress of the job; (2) a prohibition on plaintiff working farther than fifteen-minutes driving distance from home; (3) a requirement that plaintiff keep food nearby in the event of dropping sugar levels; (4) a requirement that plaintiff be permitted to use the restroom at will due to medication she was taking; and, (5) a requirement that plaintiff be seated for no more than an hour at a time, with permission to get up to move around to reduce fluid retention in her limbs. Defendants took no action after receiving this letter.

At the time of her termination, plaintiff was a union member covered by a collective bargaining agreement. Plaintiff grieved her termination pursuant to union grievance procedures, and was rehired by the County as a permit clerk on August 8, 2005. The County restored plaintiff's seniority date when she was rehired.

## III.    PROCEDURAL HISTORY

On March 26, 2007, plaintiff filed a two-count Complaint against the County and County employees Thome, Cherry and Dolan alleging unlawful termination and retaliation under the FMLA. By Order dated August 23, 2007, the Court transferred the case to the Civil Suspense

5

File pending plaintiff's receipt of a Right to Sue Letter from the Equal Employment Opportunity Commission ("EEOC"), covering additional claims under the ADA.  Plaintiff was issued a Notice of Suit Rights by the EEOC on October 30, 2007.  Thereafter, by Orders dated December 4, 2007, the Court transferred the case from the Civil Suspense File to the Court's active docket and granted plaintiff leave to file an amended complaint adding claims under the ADA and other claims.

On December 18, 2007, plaintiff filed an Amended Complaint restating her FMLA claims in Counts I and II and adding eight new claims against defendants.  Counts III through V assert claims against the County for disability discrimination, retaliation and interference under the ADA.  Counts VI through VIII assert claims against all defendants for disability discrimination, retaliation and interference under the PHRA.  Count IX asserts a claim against the County for disability discrimination under the Rehabilitation Act.  Count X alleged a breach of the duty of fair representation against the County under the Labor Management Relations Act, 29 U.S.C. § 185, et seq.  By Order and Memorandum dated February 28, 2008, the Court granted Defendant Bucks County Municipality's Motion to Dismiss Count X of the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and dismissed Count X of the Amended Complaint with prejudice.

On April 17, 2008, defendants filed the instant motion for summary judgment as to all counts of the Amended Complaint.

## IV.    LEGAL STANDARD

A court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law." Id. In considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the party opposing summary judgment." Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

## V.    DISCUSSION

### A.    FMLA Claims

#### 1.    Plaintiff's FMLA Interference Claim – Count I

Count I alleges that defendants violated the FMLA by unlawfully terminating plaintiff. Specifically, plaintiff argues that defendants had a duty under the FMLA to discuss "an equivalent position" with plaintiff when she expressed a desire to resume working in her conversation with Ms. Markowitz on November 18, 2004, and in her letter dated March 23, 2005.

29 U.S.C. § 2615(a)(1) states: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under [the FMLA]." To state a claim of interference under § 2615(a)(1), an "employee only needs to show that [s]he was entitled to benefits under the FMLA and that [s]he was denied them." Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005).

Under the FMLA, an employee is entitled to twelve weeks of leave during any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform

the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  The statute also provides that "[o]n return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment."  29 C.F.R. § 825.214(a).  However, "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA."  29 C.F.R. § 825.214(b).

The Third Circuit has held "that the FMLA does not require an employer to provide a reasonable accommodation to an employee to facilitate [her] return to the same or equivalent position at the conclusion of [her] medical leave."  Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 384 (3d Cir. 2002) (quotation marks omitted).  Thus, "the employee must be able to perform the essential functions of the job without accommodation" to prevail on an FMLA interference claim alleging unlawful termination.  Fogleman v. Greater Hazleton Health Alliance, 122 Fed. App'x 581, 587 (3d Cir. 2004) (unpublished opinion).

It is undisputed that plaintiff was granted her twelve weeks of statutorily mandated FMLA leave and that she had no difficulty obtaining approval for that leave.  There is also no dispute that plaintiff was unable to return to her position as a 911 dispatcher at the end of her FMLA leave period.  Plaintiff stated repeatedly at her deposition that she could not work as a 911 dispatcher for medical reasons, a limitation which existed at all times relevant to this lawsuit.  (Pl.'s Dep. 2/27/08, Ex. A to Defs.' Mot. at 199-200, 255-57, 355.)  Plaintiff also explained during her telephone conversation with defendant Markowitz that she was interested in working, but unable to work as a 911 dispatcher because of an ongoing health condition.  (Id. at 98-99.)

8

Similarly, the letter from plaintiff's doctor to the County explicitly stated that plaintiff "may not return as a 9-1-1 dispatcher due to the stress level of the job and the effect it has on her condition of diabetes."  (Dr. Rock Letter, 4/4/05, Pl.'s Ex. 12.)

Based on this uncontradicted evidence, the Court concludes that plaintiff was "unable to perform an essential function of the position because of a physical or mental condition."  29 C.F.R. § 825.214(b).  Accordingly, plaintiff had "no right to restoration to another position under the FMLA," id., and her FMLA interference claim fails as a matter of law.  Thus, the Court grants defendants' motion for summary judgment as to plaintiff's FMLA interference claim against all defendants in Count I.

### 2.        Plaintiff's FMLA Retaliation Claim – Count II

In Count II of the Amended Complaint, plaintiff asserts a claim of unlawful retaliation under the FMLA.  Retaliation claims under the FMLA are analyzed under the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Grosso v. Fed. Exp. Corp., 467 F. Supp. 2d 449, 458 (E.D. Pa. 2006).  Under the McDonnell Douglas framework, a plaintiff must first make out a prima facie case of retaliation.  After a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  If the employer provides a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to establish that the employer's reason was pretext for retaliatory animus.  See id. at 458.

To establish a prima facie case of retaliation under the FMLA, plaintiff must show that: "(1) [s]he took an FMLA leave, (2) [s]he suffered an adverse employment decision, and (3) the adverse decision was causally related to [her] leave."  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146-47 (3d Cir. 2004).

It is undisputed that plaintiff took FMLA leave beginning on September 20, 2004.  It is also undisputed that plaintiff was discharged from employment with the County effective March 25, 2008.  Defendants argue that plaintiff cannot establish that she "suffered an adverse employment decision" as a result of her termination, because she was unable to return to work at the end of her leave period.  The Court disagrees with defendants on this issue.

In support of their position, defendants cite cases from the Eastern District of Pennsylvania and the District of New Jersey holding that "[i]n order to show that termination was adverse, Plaintiff needs to present evidence indicating that she could have performed her job duties at the time of her termination."  Dogmanits v. Capital Blue Cross, 413 F. Supp. 2d 452, 463 (E.D. Pa. 2005); see also Smith v. UBS Fin. Serv., Inc., No. 06-3048, 2006 WL 2668203, *3 (D.N.J. Sept. 12, 2006); Alifano v. Merck & Co., 175 F. Supp. 2d 792, 795 (E.D. Pa. 2001).  However, other courts have held that a plaintiff's discharge is an "adverse action" for purposes of an FMLA retaliation claim, even where the plaintiff is unable to return to work.  See, e.g., Chapman v. UPMC Health Sys., 516 F. Supp. 2d 506, 524 & n.4 (W.D. Pa. 2007); Keim v. Nat'l R.R. Passenger Corp., No. 05-4338, 2007 WL 2155656, *7 n.6 (E.D. Pa. July 26, 2007).  Those Courts note that the decisions defendants rely on conflate the regulations applicable to interference and retaliation claims under the FMLA in holding that a plaintiff's inability to return to work precludes finding an adverse action for purposes of a retaliation claim.

The Court concludes that a plaintiff's discharge may satisfy the second element of a prima facie retaliation claim even where the defendant cannot return to work.  Cf. Conoshenti, 364 F.3d at 147 (holding plaintiff satisfied first two elements of retaliation claim because "[t]here [wa]s no dispute that Conoshenti took an FMLA leave and that PSE & G discharged him on

10

April 17, 1999").  Thus, because there is no dispute that plaintiff took FMLA leave and was

subsequently discharged from employment, plaintiff has satisfied the first two elements of a

prima facie case of retaliation.

       The Court must next consider whether there is a causal connection between plaintiff's

discharge and her FMLA leave.  Plaintiff points to one piece of evidence in support of her

position that she was discharged for exercising her rights under the FMLA.  That evidence

consists of the following exchange between defendant Dolan and plaintiff's counsel at defendant

Dolan's deposition:

Question:     What is your understanding of why the plaintiff was fired?

Answer:      Because her contractual leave of absence was exhausted.

* * *

Question:     So it was a medical leave issue that led to her termination?

Answer:      No, it was because she exhausted her time, based on a union contract.

Question:     For a medical leave of absence, correct?

Answer:      Yes.

(Dolan Dep., Ex. 2 to Pl.'s Resp. at 43-44.)  After this exchange, plaintiff's counsel continued

pressing defendant Dolan to state that plaintiff was discharged for taking medical leave.

Defendant Dolan reiterated that plaintiff was discharged because her six months of contractual

leave had expired.

       Plaintiff's argument confuses her act of taking leave with her failure to return to work

after her leave period ended.  Contrary to plaintiff's representation of defendant Dolan's

testimony, defendant Dolan did not state – or imply – that plaintiff was discharged because of

retaliatory animus based on plaintiff's exercise of her rights.  Rather, it was defendant Dolan's

uncontradicted testimony that plaintiff was discharged because her leave had expired and she did not return to work.  Defendant Dolan's testimony does not support the inference that plaintiff was punished for exercising her rights.

Other than defendant Dolan's testimony, plaintiff points to no other evidence supporting the inference that she was discharged in retaliation for taking FMLA leave.  Accordingly, plaintiff has failed to establish a genuine issue of material fact as to whether she was discharged in retaliation for exercising her FMLA rights.  Thus, the Court grants defendants' motion for summary judgment as to plaintiff's FMLA retaliation claim against all defendants in Count II.

**B.      ADA, PHRA and Rehabilitation Act Claims**

In Counts III through IX plaintiff asserts disability discrimination, interference[2] and retaliation claims under the ADA, PHRA and Rehabilitation Act.  The Third Circuit has held "that a claim under the PHRA is coextensive with a claim under the ADA" and that a district court may apply it analysis to claims under the ADA to similar claims under the PHRA.  See Sally v. Circuit City Stores, Inc., 160 F.3d 977, 979 n.1 (3d Cir. 1998) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)).  The Third Circuit has also held that "the substantive standards for determining liability are the same" under the ADA and Rehabilitation Act.  See

_____

[2] In Counts V and VIII of the Amended Complaint, plaintiff asserts interference claims under the ADA and PHRA.  In the Amended Complaint, plaintiff does not differentiate the factual allegations underlying her three ADA and PHRA claims.  In her briefs submitted in opposition to defendants' motion, plaintiff refers only to her disability discrimination and retaliation claims under the ADA, PHRA and Rehabilitation Act and cites no authority in support of her "interference" claim under the ADA or PHRA.  The Court could find no authority in the Third Circuit or Pennsylvania state courts addressing "interference" claims under the ADA or PHRA.  Thus, because plaintiff has neither identified legal authority in support of her "interference" claims under the ADA or PHRA nor identified evidence in support of those claims, the Court grants defendants' motion for summary judgment as to Counts V and VIII.

McDonald v. Pa. Dept. of Pub. Welfare, 62 F.3d 92, 94 (3d Cir. 1995).  Accordingly, the Court

will only analyze plaintiff's claims under the ADA because its conclusions with respect to those

claims apply equally to plaintiff's claims under the PHRA and Rehabilitation Act.

> **1.     Plaintiff's ADA, PHRA and Rehabilitation Act Disability
> Discrimination Claims – Counts III, VI and IX**

Plaintiff asserts disability discrimination claims in Counts III, VI and IX of the Amended

Complaint.  The ADA prohibits an employer from discriminating against any qualified individual

with a disability on the basis of his or her disability.  42 U.S.C. § 12112(a).  "A plaintiff presents

a prima facie case of discrimination under the ADA by demonstrating: (1) [s]he is a disabled

person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential

functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he

has suffered an otherwise adverse employment decision as a result of discrimination."  Gaul v.

Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998).

The parties dispute whether plaintiff was a "disabled" person as that term is defined under

the ADA.  However, the Court need not decide that question, because even assuming plaintiff

was disabled, she has failed to present evidence that she was "otherwise qualified to perform the

essential functions of the job."  Gaul, 134 F.3d at 580.

The ADA defines a "qualified individual with a disability" as "an individual with a

disability who, with or without reasonable accommodation, can perform the essential functions

of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

Assessing whether plaintiff is a qualified individual involves a two-step inquiry.  First, plaintiff

must establish that she possesses the skill, experience or education necessary to adequately

13

perform the job.  See Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001).

Second, plaintiff must establish that she is capable of performing the essential elements of the

position with or without reasonable accommodation.  Id.  The determination as to whether

plaintiff is a qualified individual with a disability who can perform the essential functions of her

position with or without reasonable accommodation is made at the time of the employment

decision.  See Turner v. Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006).

In her response to defendants' motion, plaintiff contends that "[t]here is no dispute

Plaintiff was a qualified individual or did Defendants ever question Plaintiff's ability to perform

the essential function(s) of her job."  (Pl.'s Resp. 19.)  In support of this position, plaintiff cites

defendant Dolan's testimony that performance issues played no role in plaintiff's termination,

which was based solely on plaintiff exhausting her leave of absence.

Plaintiff is correct that defendant Dolan testified that plaintiff's performance as a 911

dispatcher was satisfactory.  (Dolan Dep. 44.)  This statement is evidence in support of the first

step of the "qualified individual" test, in that it supports the inference, without considering

plaintiff's disability, that plaintiff "possesse[d] the skill, experience, or education necessary to

adequately perform the job."  Skerski, 257 F.3d at 278.  However, the testimony does not support

the inference that at the time of her termination, plaintiff was capable of performing the essential

functions of the job of a 911 dispatcher.  To the contrary, the uncontradicted record evidence

establishes that plaintiff was unable to resume her dispatcher duties on March 25, 2008, with or

without reasonable accommodation, because of the stress associated with the job, the distance of

the job from her home, and her need for flexibility to leave her station "at will" to use the

restroom or move around.  See (Dr. Rock Letter) (stating that plaintiff "may not return as a 9-1-1

dispatcher" and listing necessary accommodations for her to resume working in a different position); (Dr. Rock Med. Report, 2/29/08, Ex. 4 to Pl.'s Resp. at 5) (same); see also (Pl.'s Dep. 254-57) (explaining why dispatch job is incompatible with her medical restrictions).

Plaintiff argues that even if she was unable to return to her job as a 911 dispatcher, the County had an obligation to transfer her to an appropriate position. In response, defendants state that plaintiff has failed to satisfy her burden of identifying an appropriate position into which she could have been transferred. The Court agrees with defendants on this issue.

"An employer's obligation to provide a reasonable accommodation does not require the employer to create a new job. However, an employer may be required to transfer an employee to an existing position." Donahue v. Consol. Rail Corp., 224 F.3d 226, 230 (3d Cir. 2000) (citing Mengine v. Runyon, 114 F.3d 415, 417-418 (3d Cir. 1997); Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir. 1996)). To prevail in a failure-to-transfer case, it is the employee's burden to prove: "(1) that there was a vacant, funded position; (2) that the position was at or below the level of the plaintiff's former job; and (3) that the plaintiff was qualified to perform the essential duties of this job with reasonable accommodation." Id.

Plaintiff has presented no evidence of a vacant, funded position, at or below the level of her former job, that was available at the time she was discharged from her employment with the County. Although plaintiff was ultimately rehired by the County on August 8, 2005, as a permit clerk, there is no evidence that such a position was available at the time plaintiff was notified of her discharge on April 4, 2005.[3]

---

[3] Plaintiff was informed of the availability of the permit clerk position by the County at a July 13, 2005 meeting regarding her grievance.

In one conclusory sentence, plaintiff tries to avoid this deficiency by arguing that "Defendants never got to the question of whether Plaintiff could perform the essential functions because Defendants failed to engage in an 'interactive process' prior to terminating plaintiff."[4] (Pl.'s Resp. 19.)  However, the Third Circuit has rejected this argument and held that "in a failure-to-transfer case, if, after a full opportunity for discovery, the summary judgment record is insufficient to establish the existence of an appropriate position into which the plaintiff could have been transferred, summary judgment must be granted in favor of the defendant – even if it also appears that the defendant failed to engage in good faith in the interactive process."  Shapiro v. Twp. of Lakewood, 292 F.3d 356, 359-360 (3d Cir. 2002) (Alito, J.) (quoting Donahue, 224 F.3d at 234).  Thus, even assuming arguendo that the County failed to engage in an interactive process – a point the County vigorously contests – plaintiff cannot avoid her burden of presenting evidence of a vacant, funded position at or below her former job for which she was qualified. The Court concludes that plaintiff has failed to present any evidence of such a position. Accordingly, the Court grants defendants' motion for summary judgment as to plaintiff's ADA and Rehabilitation Act disability discrimination claims against the County in Counts III and IX and plaintiff's PHRA disability discrimination claim against all defendants in Count VI.

> ### 2.      Plaintiff's ADA and PHRA Retaliation Claims – Counts IV and VII

In Counts IV and VII of the Amended Complaint, plaintiff asserts retaliation claims under the ADA and PHRA.  The burden-shifting framework of McDonnell Douglas applicable to

---

[4] The ADA regulations provide that: "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation.  This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  29 C.F.R. § 1630.2(o)(3).  The Third Circuit has "endorsed the concept of the 'interactive process'" under the ADA.  Shapiro v. Twp. of Lakewood, 292 F.3d 356, 359 (3d Cir. 2002).

plaintiff's FMLA retaliation claim also applies to plaintiff's ADA retaliation claim. See Williams v. Philadelphia Housing Auth. Police Dept., 380 F.3d 751, 760 (3d Cir. 2004) (citing Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000)).  To establish a prima facie case of retaliation, plaintiff must also satisfy the same three elements applicable to her FMLA claim: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Id. at 759 (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002)).

Even assuming that plaintiff could establish a prima facie case of retaliation, her claim would fail because of the absence of evidence that the legitimate, nondiscriminatory reason offered by defendants for plaintiff's termination was pretext for retaliatory animus.  Defendants contend that plaintiff was dismissed from employment because, after her contractual leave period ended, she neither returned to her position nor provided information about her medical condition and necessary accommodations in a timely fashion.  (Defs.' Mot 27-29.)  Federal Rule of Civil Procedure 56(e) provides, in relevant part, that when "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial . . . ."  Plaintiff offers no argument, let alone evidence, in opposition to defendants' position.  Accordingly, the Court concludes there is no genuine issue of material fact as to whether defendants' stated non-discriminatory reason for plaintiff's dismissal was pretextual.  For that reason, plaintiff's ADA and PHRA retaliation claims fail and the Court grants defendants' motion for summary judgment as to plaintiff's ADA

17

retaliation claim against the County in Count IV and plaintiff's PHRA retaliation claim against all defendants in Count VII.

## VI.     CONCLUSION

For all of the foregoing reasons, the Court grants the Motion of Defendants Bucks County Municipality, Carmen Thome, Rachael Cherry, and Meredith Dolan for Summary Judgment as to all Counts of the Amended Complaint and enters judgment in favor of the County and defendants Carmen Thome, Rachael Cherry and Meredith Dolan, and against plaintiff Susan Castellani.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUSAN CASTELLANI** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | **NO. 07-1198** |
| **BUCKS COUNTY MUNICIPALITY** | : | |
| **("Defendant BCM"), CARMEN THOME,** | : | |
| **RACHAEL CHERRY, and MEREDITH** | : | |
| **DOLAN** | : | |
| **Defendants.** | : | |
| | : | |

**O R D E R**

AND NOW, this 27th day of August, 2008, upon consideration of the Motion of

Defendants Bucks County Municipality, Carmen Thome, Rachael Cherry, and Meredith Dolan

for Summary Judgment (Document No. 24, filed April 17, 2008), Plaintiff's Response in

Opposition to the Motion of Defendants Bucks County Municipality, Carmen Thome, Rachael

Cherry, and Meredith Dolan for Summary Judgment (Document No. 25, filed May 1, 2008),

Reply Brief of Defendants in Further Support of Their Motion for Summary Judgment

(Document No. 26, filed May 13, 2008), and Plaintiff's Sur-reply Brief in Opposition to the Brief

of Defendants in Further Support of Their Motion for Summary Judgment (Document No. 27,

filed May 16, 2008), for the reasons stated in the attached Memorandum, **IT IS ORDERED** that

the Motion of Defendants Bucks County Municipality, Carmen Thome, Rachael Cherry, and

Meredith Dolan for Summary Judgment is **GRANTED** and **JUDGMENT IS ENTERED** in

**FAVOR** of defendants Bucks County Municipality, Carmen Thome, Rachael Cherry, and

Meredith Dolan, and **AGAINST** plaintiff Susan Castellani.

**BY THE COURT:**

**/s/ Honorable Jan E. DuBois**
     **JAN E. DUBOIS, J.**

19